**Haywood WILLIAMS, Jr., et al.,
Appellants,**

v.

**Elliot L. RICHARDSON, etc., et al.,
Appellees.**

**No. 72–1534.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1973.

Decided June 29, 1973.

David K. Hardy, Kansas City, Mo., for appellants.

Mary A. Senner, Asst. U. S. Atty., Kansas City, Mo., for appellees.

Before MEHAFFY, BRIGHT, and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Petitioner, Haywood Williams, Jr., and six other individuals brought this class action for a writ of habeas corpus and for declaratory and injunctive relief against Elliot Richardson, Secretary of Health, Education and Welfare; Richard Kleindienst, Attorney General; Dr. P. J. Ciccone, Director of the United States Medical Center; Norman Carlson, Director of United States Bureau of Prisons; and Wayne Colburn, Director of United States Marshal Services. Petitioners allege infringement of their constitutional rights and the constitutional rights of others of the class. The class encompassed by this action consists of all inmates and patients of the United States Medical Center (the Center) who have been committed to the Center under the provisions of §§ 4244 through 4248 of Title 18, United States Code. The district court held the case inappropriate for class action and dismissed it. We reverse and remand for further proceedings.

The petitioners contend that respondents have failed to provide "constitutionally adequate medical and psychiatric care and treatment for petitioners and to provide that petitioners be free from cruel and unusual punishment and conditions of confinement and transportation while in respondents' custody."[1]

---

1. The petitioners make the following specific complaints regarding treatment afforded members of the class at the Center:

(a) Respondents have failed to provide constitutionally adequate medical care and treatment contemplated by Congress in enacting §§ 4244–4248, Title 18, United States Code.

(b) Petitioners are denied adequate psychiatric treatment and care by confinement to the custody of the Attorney General in a penal institution and are denied psychiatric treatment and care received

In rejecting the complaint, the district court approved the memorandum proposed by the United States Magistrate which stated in part:

> The practice of joining a number of petitioners in one habeas corpus case is not believed by this Court to be practical or desirable. Individual inmates having complaints about the conditions of their confinement can bring habeas corpus actions on forms provided for them free of charge and the Federal Public Defender will be appointed to represent them. If individual cases indeed present common questions of law and fact they can be joined for purposes of trial.

The precise question presented by this appeal is whether inmates of the Center may as a group attack their conditions of confinement and treatment while they are committed to the custody of the Attorney General pursuant to 18 U.S.C. §§ 4244–4248.

 By way of background, it should be noted that challenges to conditions of confinement are cognizable in habeas corpus. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d

418 (1971); Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Mead v. Parker, 464 F.2d 1108 (9th Cir. 1972); Armstrong v. Cardwell, 457 F.2d 34 (6th Cir. 1972). We have repeatedly expressed our view that the Center is a penal institution and one who is confined there suffers incarceration, e. g., Henry v. Ciccone, 440 F.2d 1052 (8th Cir. 1971); Guy v. Ciccone, 439 F.2d 400 (8th Cir. 1971) (concurring opinion), and such holdings are particularly relevant in light of allegations in the complaint that "unsentenced, untried, mentally ill patients" are being confined at the Center without proper medical treatment. Additionally, we note the increasing tendency of federal courts to insist upon adequate medical treatment as a constitutional prerequisite to detention of the mentally ill. United States v. Pardue, 354 F.Supp. 1377 (D.Conn.1973), 13 Cr.L.Rep. 2008 (April 4, 1973); Wyatt v. Stickney, 344 F.Supp. 387 (M.D.Ala.1972); United States v. Walker, 335 F.Supp. 705 (N.D.Cal.1971); United States v. Jackson, 306 F.Supp. 4 (N.D.Cal.1969). See Rouse v. Cameron, 125 U.S.App.D.C.

by other individuals committed to the Department of Mental Health and Hygiene.

(c) There is an insufficient number of qualified psychiatric personnel to administer adequate treatment to petitioners and the personnel-patient ratio for psychiatrists, psychiatric nurses, psychologists, social workers and psychiatric therapists fails to conform to minimum standards for adequate treatment.

(d) Psychiatric technicians, attendants and orderlies are not employed in sufficient number to maintain the Medical Center in a clean and sanitary manner required by psychiatric patients.

(e) Psychiatric care for petitioners confined at the Medical Center is virtually non-existent and there are no individualized treatment plans, but treatment consists of the administration of tranquilizers and drugs administered solely by lay custodial personnel to keep petitioners amenable to their conditions of confinement. The supervision of the administration of said drugs is totally inadequate.

(f) The confinement of unsentenced, untried, mentally ill patients at the Medi-

cal Center is purely penal and the conditions of their confinement constitute cruel and unusual punishment.

(g) Petitioners and the members of their class suffer the infliction of unnecessarily harsh physical force beyond that required for self-defense or prevention of violence. Tear gas, chemical Mace and other chemicals are used against petitioners when not required to protect life or property or to prevent violence. Petitioners are confined in "strip" cells which are completely enclosed, lack any furniture or mattresses and are without toilet, sink or running water.

(h) Petitioners and the members of the class they represent are subjected to cruel and unusual punishment by the United States Marshals Service for complaining of the conditions of their confinement during transportation from court to the United States Medical Center. Petitioners are punished for requesting psychiatric care and other necessary medical attention while being transported. Petitioners are punished for requesting emergency air transportation and for refusing to allow their hair to be cut.

366, 373 F.2d 451 (1966); Martarella v. Kelley, 349 F.Supp. 575 (S.D.N.Y.1972); Cook v. Ciccone, 312 F.Supp. 822 (W.D. Mo.1970).

In regard to the class action issue, as we read the district court's adopted opinion, a class action is never appropriate in a habeas corpus proceeding. Contrary to the district court's holding that a class action would not be "practical or desirable," we think that under certain circumstances a class action provides an appropriate procedure to resolve the claims of a group of petitioners and avoid unnecessary duplication of judicial efforts in considering multiple petitions, holding multiple hearings, and writing multiple opinions. *See* Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1169–73 (1970). Considering the caseload burden of the federal courts, a considerable proportion of which is attributable to criminal appeals, we think that a method by which the common claims of a large group of petitioners may be properly litigated without endangering the individual rights of the class should not be summarily foreclosed unless clearly inappropriate under the circumstances. Even the government's counsel conceded on oral argument that a habeas corpus class action is not always improper.

The Ninth Circuit has recently held in Mead v. Parker, *supra,* 464 F.2d 1108, that a habeas corpus petition may seek relief for an appropriate class:

> Nor can we agree that a petition for a writ of habeas corpus can never be treated as a class action. Certainly the usual habeas corpus case relates only to the individual petitioner and to his unique problem. But there can be cases, and this is one of them, where the relief sought can be of immediate benefit to a large and amorphous group. In such cases, it has been held that a class action may be appropriate. [*Id.* at 1112–1113.]

The *Mead* court, while not deciding the class action issue, held that it was error

for the district court to decide the question without a hearing. At least one district court has permitted six prisoners to bring a habeas corpus class action on behalf of all similarly situated prisoners in Florida. Adderly v. Wainwright, 46 F.R.D. 97 (M.D.Fla.1968).

The class action procedure may very well represent the most appropriate manner of litigating the general claims alleged in the complaint. Thus we hold as error the dismissal of the complaint in the instant action.

In remanding this case to the district court, we adopt the following additional comment from *Mead, supra,* 464 F.2d at 1112.

> It may be that the [district] court will ultimately decide that it is unnecessary to treat this as a class action, perhaps on the theory that, if the petitioners are entitled to relief, the relief will benefit all inmates, whether made parties or not. Or, the court might decide to treat the case as a class action on one or more of the grounds stated in Rule 23(b). A court has considerable latitude in deciding how best to proceed.

Reversed and remanded for further proceedings consistent with this opinion.

MEHAFFY, Circuit Judge (dissenting).

As I understand it, the narrow holding of the majority's opinion is that a petition in federal court for habeas corpus may, under appropriate circumstances, be pursued as a class action. I have no significant disagreement with this holding as an abstract principle. I do not believe, however, that the principle stated above supports the result reached by the majority; nor do I feel that the majority's opinion discusses the question of class action habeas petitions in sufficient detail to afford the district court a reasonable indication of its duty on remand. For these reasons I must respectfully dissent.

## I.

The majority's decision to reverse in this case is based on their conclusion that the district court held a class action never to be appropriate in a habeas corpus proceeding. Majority opinion at . . . . This interpretation of the district court's opinion apparently stems from the majority's reading of the following language:

"The practice of joining a number of petitioners in one habeas corpus case is not believed by this Court to be practical or desirable. Individual inmates having complaints about the conditions of their confinement can bring habeas corpus actions on forms provided for them free of charge and the Federal Public Defender will be appointed to represent them. If individual cases indeed present common questions of law and fact they can be joined for purposes of trial." Williams v. Richardson, *supra,* at 1.

Although I feel the language is ambiguous, I can easily understand how the majority might give this passage *standing alone* the meaning they ascribe to it. I am firmly convinced, however, that the original records in this case and the related case of Williams v. Ciccone, Civil Action No. 2918–2 (W.D.Mo. June 8, 1972) (unreported) clearly demonstrate the majority's interpretation to be in error.

Williams v. Ciccone involved a petition for a writ of habeas corpus by two of the named appellants in this case and some seven other inmates of the Springfield Medical Center. The petitioners in Williams v. Ciccone sought to attack the adequacy of their medical treatment and the conditions of their confinement as representatives of a class. Although the district court ordered the Federal Public Defender to assist the petitioners in presenting their case, the petition ultimately filed in Williams v. Ciccone failed to conform to the local rules of the district court for habeas proceedings. More specifically the single joint petition that was filed was not in compliance with the requirement of local rule 22(1) that each habeas petitioner must file his petition on the forms supplied by the court.[1] Apparently recognizing the noncompliance of the single joint petition, counsel for the petitioners moved the district court to waive the requirements of local rule 22(1). The district court did not waive the provisions of the local rules, however, and Judge Collinson dismissed the petition for failure to conform to the requirements of local rule 22(1).[2] In explaining the dismissal Judge Collinson stated:

"This court has prescribed by rule the forms to be used in the filing of all habeas corpus [proceedings] by inmates of the United States Medical Center and copies of these forms are available without charge. *These forms are most helpful to the Court and are necessary for the proper processing of the many applications for habeas corpus which this Court receives from the United States Medical Center."* Williams v. Ciccone, *supra,* at 1 (emphasis supplied).

Although the dismissal in Williams v. Ciccone did not reach the class action aspect of the petition, Judge Collinson went on in his opinion to suggest the procedure he thought would be most ap-

---

1. In pertinent part the district court's rule reads as follows:
 "Petitions for a writ of habeas corpus and motions filed pursuant to 28 U.S.C. Section 2255 (attacking a sentence imposed by this Court), by persons in custody, shall be in writing, signed and verified. *Such petitions and motions shall be on forms supplied by the Court."* (Emphasis supplied.)

2. In strictly technical terms Judge Collinson did not dismiss the action in Williams v. Ciccone. He merely denied leave to proceed in forma pauperis. For all practical purposes, however, the denial of leave to proceed in forma pauperis may be considered as a dismissal.

propriate for the petitioners to use in their quest for class relief:

"The practice of joining a number of petitioners in one habeas corpus case is not believed by this Court to be practical or desirable. If this is a proper type of action to be designated a class action, as requested in the complaint, it is only necessary to bring it by one plaintiff to represent the entire class. If it is not a proper class action, the individual petitioners can file separate applications and common questions of fact and law can be joined for purposes of trial." Williams v. Ciccone, *supra*, at 1–2.

The message of Williams v. Ciccone seems clear enough: an application for class habeas relief should be presented on the forms required by local rule 22(1) and only one inmate would be needed to represent the class.

Almost immediately after the dismissal in Williams v. Ciccone, petitioners Williams, Lamar, and five other Springfield inmates filed the action that is the subject of this appeal. Once again the Federal Public Defender was appointed to assist the petitioners, and once again a single joint petition was filed which failed to conform with local rule 22(1). The petition was routinely referred to the United States Magistrate, who recommended that "This action should be dismissed for the same reasons advanced by Judge Collinson in Haywood Williams, Jr., et al v. Ciccone. . . ."

The magistrate's Proposed Memorandum and Order then went on to paraphrase Judge Collinson's Williams v. Ciccone opinion in the language now seized on by the majority to justify its reversal.[3]

As I have already noted, I can understand how the majority might construe the magistrate's language standing alone to bar class relief in all habeas proceedings. If the majority had read Judge Collinson's original language in Williams v. Ciccone more carefully, however, I am sure they would have understood that the district court in both cases was dealing with nothing more than the question of compliance with local rule 22(1). If there were something about local rule 22(1) that, in practical effect, rendered class relief unavailable I might be persuaded to concur in the result reached by the majority. But rule 22(1) has no such effect. All the rule requires is that the inmates utilize the standardized forms which the court has carefully developed to expedite its handling of postconviction petitions.[4] Indeed the only comments which the district court addressed to the class action aspect of the petitions in either case was the suggestion that it would be more practical and desirable to have only one petitioner as the named representative of the class. As I understand this comment, it is not only a sensible suggestion, but also an express recognition that class relief could well be appropriate in petitioners' case.

---

3. The language quoted by the majority opinion at 360 and repeated in this dissent at 362 was actually written by the United States Magistrate in the Proposed Memorandum and Order he prepared for the district court. The Proposed Memorandum and Order was adopted by Judge Collinson without alteration.

4. The forms used in the Western District of Missouri are copied from the forms discussed and reprinted at 33 F.R.D. 382–384, 391–408 (1963). It is relevant to note that the forms and other procedures used by the district court in the Western District of Missouri are the products of very careful thought and planning. *See*

*generally* Becker, Collateral Post-Conviction Review of State and Federal Criminal Judgments on Habeas Corpus and Section 2255 Motions—View of a District Judge, 33 F.R.D. 452 (1963); Oliver, Postconviction Applications Viewed by a Federal Judge, 39 F.R.D. 281 (1965); Oliver, Postconviction Applications Viewed by a Federal Judge—Revisited, 45 F.R.D. 199 (1968). Furthermore, the decision in Williams v. Ciccone not to waive the requirements of rule 22 (1) was not one that was made casually. In point of fact the entire district court conferred on the matter and Judge Collinson's opinion had the express concurrence of the district court *en banc*.

## II.

The remand in this case ostensibly directs the district court to determine whether or not this case is one in which a class action would be appropriate. Unfortunately the majority opinion gives little indication of what factors should be considered in making this determination. Furthermore, the majority fails to outline the extent of the proceedings they expect to be held on remand. (For example, the majority likens this case to Mead v. Parker, which required a hearing on remand, but fails to state whether they expect the district court to hold a hearing to comply with their mandate.). In light of these shortcomings I feel compelled to make some general observations.

Under federal law habeas corpus is generally characterized as a civil action, but this characterization does not mean that the Federal Rules of Civil Procedure are automatically and completely applicable. Federal habeas corpus is a uniquely personal remedy with its own distinct procedures which are deeply rooted in tradition and statute. Federal Rule 81(a)(2) expressly recognizes this unique nature of habeas by providing that the Federal Rules of Civil Procedure are applicable to habeas only to the extent that the rules conform to prior practice and do not conflict with the habeas statute. Although, as the majority notes, the habeas remedy has been liberalized greatly in recent years, I do not think we have yet reached the point where a habeas petitioner has the automatic right to utilize all of the modern civil procedure devices embodied in the Federal Rules. Instead, I am convinced that Fed.R.Civ.P. 81(a)(2) precludes any automatic and complete application of the Federal Rules in habeas. My opinion in this regard is bolstered by the Supreme Court's holding in Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), which refused to extend the discovery procedures of Fed.R.Civ.P. 33 to petitioners in habeas. Although the majority opinion in *Harris* expressly refrained from commenting on the applicability of Rule 23 to habeas, 394 U.S. at 294 n. 5, 89 S.Ct. 1082, I am convinced that the Court's logic in that case compels a similar conclusion here; *i.e.* that Rule 23 is not automatically and completely applicable to habeas, but that the district court may fashion appropriate procedures by analogy to Rule 23 whenever it concludes that justice so requires.

My analysis of the habeas class action issue in light of Rule 81(a)(2) and Harris v. Nelson is in complete conformity with every one of the relevant reported cases that I have been able to locate.[5]

5. My research has revealed only six previously reported instances in which a federal court has been presented with a habeas petition seeking class relief. The two earliest cases involved separate but similar and virtually simultaneous attacks on various aspects of the death penalty. Hill v. Nelson, 272 F.Supp. 790 (N.D.Cal.1967); Adderly v. Wainwright, 272 F.Supp. 530 (M.D.Fla.1967). In *Hill* the district court held that class relief could be granted in habeas but that the attack presented could best be handled by consolidation rather than class action. 272 F.Supp. 794–795; *see* Modesto v. Nelson, 296 F.Supp. 1375 (N.D.Cal.1968). In *Adderly* the court concluded that class relief was appropriate, and the action was ordered to proceed under the provisions of Fed.R.Civ.P. 23. Adderly v. Wainwright, 46 F.R.D. 97 (M.D.Fla.1968). The next case, chronologically, involved a class attack on the convictions and the incarcerations for curfew violation during the 1968 disturbances in Baltimore. Mitchell v. Schoonfield, 285 F.Supp. 728 (D.Md. 1968). In *Mitchell*, however, the court refused to address the class action issue squarely because many petitioners had failed to exhaust their state remedies. 285 F.Supp. at 729. *See also* Arthur v. Schoonfield, 315 F.Supp. 548 (D.Md. 1970), in which the Maryland district court was again able to avoid the class action issue, this time by the use of joinder. The fourth case is Cantrell v. Folsom, 332 F.Supp. 767 (M.D.Fla.1971), which presented a class attack on the constitutionality, on its face, of a Florida vagrancy ordinance. The district court in *Cantrell* allowed the case to proceed as a normal class action and ultimately granted declaratory relief. The fifth

None of the reported cases holds Rule 23 to be available in habeas as a matter of right. Instead these cases recognize the wisdom and practicality of using Rule 23 or an analogous procedure in habeas where such a procedure would materially advance the interests of justice and judicial economy. Furthermore, the only one of these cases decided at the circuit level or higher stresses the importance of the district court, rather than some remote appellate court, in deciding what procedure the district court should use.[6]

Finally, in reviewing the class action habeas cases that I have been able to find, I am struck by their uniform dissimilarity to this case in one important respect. In each of the other cases the class of petitioners was presenting a single legal argument which, once resolved would be resolved finally and for all members of the class.[7] Only a cursory reading of the allegations in this case is necessary to raise serious doubts about the finality with which appellants' purportedly class claims could be resolved. There is also serious doubt about the extent to which appellants' petition raises questions of either law or fact that are in any way common to the whole class. Indeed, even if each of the allegations of brutality, inadequate medical treatment, etc. were true as to all of the petitioners, I feel that they would be true as to each petitioner only because of that petitioner's individual needs and treatment.

While the district court may justifiably question the wisdom of heeding a mere dissenting opinion's guidance, I feel it necessary to make three suggestions in closing. First, I commend the district court's careful attention to the as yet unresolved issue of whether the allegations of this petition qualify for class action treatment even under the requirements for normal civil actions. Second, I urge the district court to consider the fact that all of the relevant decisions, with the possible exception of the majority opinion, stress the broad latitude given the district court in deciding whether or not multiparty habeas procedure is best suited to the problems presented in the petition. Finally, in light of the statement in oral argument that all or most of the petitioners in this case have been released, I would caution the district court against construing the majority's opinion as a license to issue itself letters patent as a roving commission of reform regardless of whether there are any parties left to back up the petitioners' extreme claims.

case, Mead v. Parker, 464 F.2d 1108 (9th Cir. 1972), which is cited by the majority, involved an attack by several petitioners, as representatives of the entire inmate population of McNeil Island Federal Penitentiary, on the adequacy of the prison's law library. On appeal the Ninth Circuit reversed the district court's holding that class relief was never available in habeas and remanded the case for a determination of whether the petition should be allowed to proceed as a class action. The last of the cases dealing with Rule 23 in habeas is Daigle v. Warner, 348 F.Supp. 1074 (D.Hawaii 1972). In *Daigle* the petitioners were servicemen who had been incarcerated after summary courts martial in which they had not been afforded any right to counsel, allegedly in violation of Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Although the district court did not grant all of the relief sought by the petitioners, the case was allowed to proceed as a class action and the relief that was granted to the petitioners was granted to them as a class.

6. Mead v. Parker, 464 F.2d 1108, 1112–1113 (9th Cir. 1972). *See also* Harris v. Nelson, 394 U.S. 286, 300 n. 7, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).

7. See note 5, *supra*.